IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 2:09-CR-291 |
| vs. | ) | |
| | ) | **SENTENCING ORDER** |
| JEFFREY PATRICK FRYE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court for the purpose of sentencing defendant Jeffrey Patrick Frye. For the reasons set forth below, the court grants the government's motion for an upward departure and sentences defendant to 240 months in prison, three years of supervised release, $31,282 in restitution, and a $700 special assessment.

## I. BACKGROUND

On August 14, 2009, defendant pled guilty to seven counts of bank robbery. In violation of 18 U.S.C. § 2113(a), and therefore "by force and violence, and by intimidation," defendant robbed the following South Carolina banks on or about the following dates:

First Citizens Bank
9205 University Boulevard, North Charleston, SC    December 24, 2008

First Citizens Bank
2830 Sunset Boulevard, Lexington, SC    December 30, 2008

First Citizens Bank
2895 Reidville Road, Spartanburg, SC    January 5, 2009

First Citizens Bank
7039 Parklane Road, Columbia, SC    January 13, 2009

1

  Bank of South Carolina
  1337 Chuck Dawley Boulevard, Mt. Pleasant, SC  January 20, 2009

  First Citizens Bank
  1099 Russell Street, Orangeburg, SC  January 23, 2009

  First Citizens Bank
  1319 North Main Street, Summerville, SC  January 26, 2009

This is defendant's second bank robbery conviction. In September 1993, the undersigned sentenced defendant to forty-six months in prison and three years of supervised release for a bank robbery conviction. In October 1996, the court revoked defendant's term of supervised release as a result of his drug use and continued criminal conduct.

  On May 7, 2010, defendant appeared before the court for sentencing. The court orally imposed the sentence of 240 months in prison, three years of supervised release, $31,282 in restitution, and a $700 special assessment. The court now issues this written order.

## II. DISCUSSION

  Pursuant to U.S.S.G. §4A1.3(a)(1), if reliable information indicates that a Criminal History Category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range.

> To determine whether a criminal history category underrepresents the seriousness of a defendant's criminal history, a district court may consider both "[p]rior sentences not used in computing the criminal history category" and "[p]rior similar adult criminal conduct not resulting in a criminal conviction."

United States v. Dalton, 477 F.3d 195, 198 (4th Cir. 2007) (quoting U.S.S.G. §4A1.3(a)(2)(A), (E)).  Section 4A1.3(a)(2) lists factors the court may consider in an upward departure.[1]  In accordance with §4A1.3,[2] the court finds that defendant's Criminal History Category of VI does not adequately reflect his past criminal conduct or

---

[1]The factors listed are:

    (A)    Prior sentence(s) not used in computing the criminal history category (e.g., sentences for foreign and tribal offenses).

    (B)    Prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions.

    (C)    Prior similar misconduct established by a civil adjudication or by a failure to comply with an administrative order.

    (D)    Whether the defendant was pending trial or sentencing on another charge at the time of the instant offense.

    (E)    Prior similar adult criminal conduct not resulting in a criminal conviction.

U.S.S.G. §4A1.3(a)(2)(A)-(E) (2009).  Factors (A) and (E) are particularly applicable in defendant's case.

[2]See also United States v. Cash, 983 F.2d 558, 560-61 (4th Cir. 1992) (holding that inadequacy of a defendant's Criminal History Category warrants an upward departure by the sentencing court), United States v. Rusher, 966 F.2d 868, 881 (4th Cir. 1992) (holding that "[a]n upward departure in the criminal history category may be justified through sentencing guideline section 4A1.3."); United States v. Streit, 962 F.2d 894, 903 (9th Cir. 1992) ("The Sentencing Guidelines make clear that an upward departure is warranted when 'reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes.'") (internal citation omitted); United States v. Myers, 589 F.3d 117, 125 (4th Cir. 2009) ("Although section 4A1.2(e) of the Guidelines prohibits considering outdated convictions and sentences in initially determining the advisory Guidelines range, such convictions and sentences can justify an upward departure for inadequate criminal history.").

likelihood of recidivism and departs upwardly in this case.

In Cash, the Fourth Circuit identified three approaches available to the court when contemplating an upward departure, once it has concluded that the defendant's Criminal History Category is inadequate. 983 F.2d 558, 561-62. One approach is for the court to determine the extent of the departure by extrapolating from the sentencing table. Id. at 561. This extrapolation can be accomplished by "extending" the sentencing table horizontally by adding criminal history categories (in cases where the Criminal History Category is less than VI), or by moving vertically down the table to successively higher offense levels in Category VI. Id. at 561 n.7. The Fourth Circuit later added:

> And while a court should indicate its reasons for departing upward under section 4A1.3, it need not "incant the specific language used in the guidelines," or "go through a ritualistic exercise in which it mechanically discusses each Criminal History Category [or offense level] it rejects en route to the category [or offense level] that it selects."

Dalton, 477 F.3d at 199 (internal citations omitted). Since defendant's Criminal History Category is already a Category VI, the court must move vertically down the sentencing table to a higher offense level.

Defendant has a total of twenty-six arrests since 1987. Of these arrests, twenty-three were convictions.³ Twenty-one of these convictions involved some type of theft or fraud. At least two convictions involve violent offenses. In the "Criminal History

---

³On July 23, 1990, defendant was arrested for committing retail theft in Schaumburg, Illinois. On September 2, 1998, defendant was arrested for committing a property crime in Mt. Pleasant, South Carolina. The dispositions for these two offenses were not available; therefore, these offenses did not result in convictions for sentencing purposes. On January 28, 2009, defendant was arrested and charged with grand larceny in Hanahan, South Carolina. This offense was listed as a "pending" charge in defendant's presentence report and did not result in a conviction for sentencing purposes.

Computations" section of the presentence report, defendant did not receive points for twelve convictions that occurred more than fifteen years prior to the instant offense. These convictions, had they been counted, would result in sixteen additional criminal history points. Defendant has twenty-six criminal history points, thirteen points above the minimum requirement for a Criminal History Category of VI. If one takes into account the sixteen potential criminal history points which had no impact on his Criminal History Category, defendant's criminal history is not adequately reflected in the Criminal History Category of VI. In such a case, a departure above the guideline range is warranted. Regarding the risk of recidivism, defendant is first aptly characterized as a "career offender" pursuant to §4B1.1. Defendant's September 1993 bank robbery conviction and September 2002 strong armed robbery conviction serve as the necessary predicate offenses for "career offender" status under the sentencing guidelines. In addition to bank robbery offenses, law enforcement agencies have arrested defendant for numerous theft and fraud offenses since 1987, including forgery, retail theft, receiving stolen goods, breach of trust, and larceny. He has also been convicted of multiple drug possession offenses. His brief career in the United States Navy, beginning on March 16, 1981, and ending in a general discharge on September 10, 1982, was riddled with six Uniform Code of Military Justice Article 15 convictions, including multiple convictions for unauthorized absence and disobedience of a lawful order, one drug possession conviction, and one assault conviction.

In February 1993, while a detoxification patient at Charleston Memorial Hospital, defendant was arrested for fourteen counts of forgery. He then fled from the hospital by

jumping out of a second floor window. During his status as an escapee, he committed the bank robbery resulting in his September 1993 conviction before this court. As stated above, in 1996, the court revoked defendant's term of supervised release due to his drug use and commission of further crimes. In 2002, defendant's state probation was terminated due to new convictions. In 2007, his state parole was revoked due to convictions for possession of stolen goods, possession of crack cocaine, and forgery.

Defendant's willingness to commit crimes is also reflected in the people he victimized. A shocking example of defendant's callousness is found in his September 2002 grand larceny conviction. In February 2002, defendant stole a purse from a woman in the Roper Hospital intensive care unit waiting room. He used keys found inside the purse to steal the woman's 1993 Buick LaSabre, valued at $6,000. The purse also contained cash and the victim's checkbook. The woman's checking account contained approximately $3,000.

In fashioning the departure, the Court finds that sixteen potential criminal history points were not attributable, all of which fall outside the countable time frame. Sixteen uncounted criminal history points, in addition to the twenty-six countable criminal history points, yields a total of twenty-nine additional points beyond the minimum to establish a Criminal History Category of VI.

If one considers each Criminal History Category as a range of three points and divides the additional twenty-nine points by three, this would establish an equivalence of approximately nine (almost ten) additional offense levels. A departure of nine levels would result in an upward departure to an offense level of 38 and a guideline range of 360

months to life; however, the statutory maximum penalty in this case is twenty years. The court finds a twenty-year sentence appropriate in defendant's case.

In reaching its decision, the court has also considered the factors set forth in 18 U.S.C. § 3553(a), including the seriousness of the offense, defendant's history and characteristics, the applicable sentencing guidelines range, and the need for restitution. Section 3553(a) requires the court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a) (2003). Those purposes are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). The need for an upward departure in defendant's case is apparent in light of purposes (A) through (C) under paragraph (a)(2). The seriousness of the offenses are demonstrated by: (1) the total actual loss of $31,282; (2) defendant's threatening gestures indicating that he had a weapon during one of the robberies;[4] (3) defendant colliding with another vehicle while fleeing the scene of the bank robbery in a car in West Columbia; and (4) defendant's theft of three cars during the course of the

---

[4] On December 30, 2008, during the bank robbery in West Columbia, defendant placed his hand in his jacket, suggesting that he had a weapon.

seven bank robberies.[5] Two of the cars stolen by defendant either belonged to, or were being rented by, acquaintances of defendant.

Defendant's continued willingness to commit crimes shows no respect for the law and an extremely high probability of recidivism. An upward departure is necessary to provide just punishment for the crimes committed by defendant, as well as to deter defendant and others from committing similar crimes in the future. Finally, an upward departure is necessary to protect the public from further financial victimization.

### III. CONCLUSION

After calculating and considering the advisory sentencing guidelines, and having also considered the relevant statutory sentencing factors contained in 18 U.S.C. § 3553(a), it is the judgment of the court that the defendant, Jeffrey Patrick Frye, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 240 months. Defendant shall pay restitution in the amount of $31,282, and a special assessment of $700, both due beginning immediately. Interest is hereby waived on the restitution.

Upon release from imprisonment, defendant shall be placed on supervised release for a term of three years. Within seventy-two hours of release from custody of the Bureau of Prisons, he shall report in person to the probation office in the district to which he is

---

[5]The court notes that the seriousness of the offenses is not reflected in the sentencing guidelines grouping rules under §3D1.4. Under §3D1.4, defendant faces the same guideline sentence for seven bank robberies as he would for only five. "Situations in which there will be inadequate scope for ensuring appropriate additional punishment for the additional crimes are likely to be unusual and *can be handled by departure from the guidelines*." U.S.S.G. §3D1.4 Background (emphasis added).

released.

While on the term of supervised release, defendant shall comply with the mandatory and standard conditions of supervision outlined in 18 U.S.C. § 3583(d). The defendant shall also comply with the following special conditions:

1. The defendant shall pay any remaining restitution at a rate of no less than $300 per month, beginning within ninety days of release. The payments shall be made payable to "Clerk, U.S. District Court," and mailed to P.O. Box 835, Charleston, SC 29402. Interest on any restitution ordered as to this defendant is waived. Payments shall be adjusted accordingly, based upon the defendant's ability to pay as determined by the court.

2. The defendant shall submit to substance abuse testing and/or treatment as approved by the U.S. Probation Officer, until such time as the defendant is released from the program by the probation officer.

3. The defendant shall be placed on a Location Monitoring Program, with electronic monitoring, for a term of six months, at the government's expense.

**AND IT IS SO ORDERED.**[6]

---

[6] Accordingly, the government's motion for an upward departure is **GRANTED**, and defendant's motion for a below guideline sentence is **DENIED**.

_____
**DAVID C. NORTON**
**CHIEF UNITED STATES DISTRICT JUDGE**

**May 7, 2010**
**Charleston, South Carolina**